**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIAM JOHNSON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>HEALTHCARE TRUST OF AMERICA, INC., W. BRADLEY BLAIR, II, RESHMA BLOCK, VICKI U. BOOTH, H. LEE COOPER, WARREN D. FIX, PETER N. FOSS, JAY P. LEUPP, and CONSTANCE B. MOORE,<br><br>　　　　　　Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff William Johnson ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.　This is a stockholder action brought by Plaintiff against Healthcare Trust of America, Inc. ("HTA" or the "Company") and the members of HTA's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge HTA with Healthcare Realty Trust Incorporated ("HR") (the "Proposed Transaction").

2. On February 28, 2022, HTA entered into an Agreement and Plan of Merger with HR, Healthcare Trust of America Holdings, LP ("Company OP") and HR Acquisition 2, LLC (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, HTA will acquire HR and each outstanding share of HR common stock will be converted into the right to receive 1.00 newly-issued share of HTA common stock. Upon closing of the Proposed Transaction, holders of Company common stock will receive a special distribution in the amount of $4.82 in cash per share of HTA common stock held.

3. Under the Merger Agreement, the Company is required to issue additional shares of HTA common stock to HR shareholders (the "Share Issuance"), who will own approximately 40% of the combined company. As a New York Stock Exchange ("NYSE") listed company, HTA is required by NYSE listing rules to secure shareholder approval before issuing 20% or more of its outstanding common stock. Thus, the Proposed Transaction is contingent upon HTA shareholders voting to approve the proposed Share Issuance.

4. On June 10, 2022, the Board authorized the filing of the materially incomplete and misleading Form 424B3 Prospectus (the "Prospectus") with the SEC. Specifically, the Prospectus, which recommends that HTA stockholders vote their shares in favor of the Share Issuance and the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the potential conflicts of interested faced by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"); (ii) the financial projections for the Company and HR and the financial analyses performed by J.P. Morgan; and (iii) the background leading to the Proposed Transaction.

5. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as HTA stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

6. The special meeting for HTA stockholders to vote on the Proposed Transaction is currently scheduled for July 15, 2022. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and HTA's other shareholders to make an informed decision whether to vote their shares in favor of the Share Issuance and the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of shares of HTA common stock.

11. Defendant HTA is a Maryland corporation, with its principal executive offices located at 16435 N. Scottsdale Road, Suite 320, Scottsdale, Arizona 85254. HTA's shares trade on the New York Stock Exchange under the ticker symbol "HTA."

12. Defendant W. Bradley Blair, II has been Chairman of the Board and a director of the Company at all relevant times.

13. Defendant Reshma Block has been a director of the Company at all relevant times.

14. Defendant Vicki U. Booth has been a director of the Company at all relevant times.

15. Defendant H. Lee Cooper has been a director of the Company at all relevant times.

16. Defendant Warren D. Fix has been a director of the Company at all relevant times.

17. Defendant Peter N. Foss has been Interim President, Chief Executive Officer and a director of the Company at all relevant times.

18. Defendant Jay P. Leupp has a director of the Company at all relevant times.

19. Defendant Constance B. Moore has been a director of the Company at all relevant times.

20. Defendants identified in paragraphs 12-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21. HTA is a publicly-traded real estate investment trust and is the largest dedicated owner and operator of medical office buildings ("MOBs") in the U.S. The Company focuses on owning and operating MOBs that serve the future of healthcare delivery and are located on health system campuses, near university medical centers, or in community core outpatient locations. HTA is the sole general partner of Company OP and derives its income from its partnership interest

in Company OP. As of March 31, 2022, Company OP's portfolio consisted of approximately 26.0 million leasable square feet, including 452 medical office buildings and 18 other healthcare facilities.

**The Proposed Transaction**

22. On February 28, 2022, HTA announced that it had entered into the Proposed Transaction, stating, in relevant part:

> **NASHVILLE, Tennessee and SCOTTSDALE, Arizona, February 28, 2022** — Healthcare Realty Trust Incorporated (NYSE:HR) ("Healthcare Realty" or "HR") and Healthcare Trust of America, Inc. (NYSE: HTA) ("Healthcare Trust of America" or "HTA") today announced that they have agreed to enter into a strategic business combination. HTA shareholders will receive a total implied value of $35.08 per share comprised of a special cash dividend of $4.82 per share and a transaction exchange ratio of 1:1 based on HR's unaffected price of $30.26 on February 24, 2022. This transaction brings together two of the largest owners of medical office buildings, creating the preeminent, pure-play medical office building REIT and positions the combined company (the "Company") to create long-term shareholder value. The Company will have a pro forma equity market capitalization of approximately $11.6 billion and a total enterprise value of $17.6 billion based on the implied values at market close on February 24, 2022.
>
> **Leadership and Organization**
>
> The Company will be led by the Healthcare Realty management team, with Todd Meredith as President and Chief Executive Officer and Kris Douglas as Executive Vice President and Chief Financial Officer. Upon completion of the transaction, the new Company will continue to operate with the Healthcare Realty name and trade on the NYSE under the ticker symbol HR.
>
> The Company will have a highly qualified, diverse Board of Directors comprised of nine existing directors of Healthcare Realty, three members of the Healthcare Trust of America Board, and one new member to be mutually agreed upon by the existing HR and HTA directors and appointed prior to closing of the transaction. Knox Singleton, Chairman of the Healthcare Realty Board, will be Chairman of the Company and Brad Blair, Chairman of the Healthcare Trust of America Board, will be appointed Vice Chairman.
>
> Upon completion of the transaction, the Company's headquarters will be based in Nashville, with additional corporate offices in Scottsdale and Charleston. The Company will implement a detailed integration process to ensure continuity for tenants, employees and all stakeholders.

5

"We are pleased to announce this strategic transaction, which unites two highly complementary medical office portfolios and represents a rare opportunity to create a sector-leading REIT in terms of both size and quality. We believe all shareholders will benefit from the Company's expanded national footprint from HR's Seattle portfolio to HTA's Boston portfolio. The Company will have unmatched market scale in concentrated clusters, meaningful corporate and operational synergies, and a larger development pipeline. We believe this transaction will be accretive through near term synergies with additional value from operational upside. It will also strengthen the combined balance sheet, enhance liquidity and improve access to capital. This combination provides a significant value creation opportunity for shareholders," stated Todd Meredith, President and Chief Executive Officer, Healthcare Realty.

"This transformative transaction joins two premier real estate companies with a combined value that we believe is much greater than the sum of its parts, with the operational and financial scale necessary to compete and drive sustainable value creation. HTA shareholders will realize an attractive premium via a special cash dividend while being able to fully participate in the future growth prospects of a powerful, sector leading MOB REIT, led by a seasoned, well-respected management team. This transaction is the culmination of a thorough strategic review process and we are pleased with the result for our shareholders, employees and tenants. We are confident this is the best path forward for HTA," stated Brad Blair, Chairman of the Board, Healthcare Trust of America.

**Key Benefits**

The combination of Healthcare Realty and Healthcare Trust of America is expected to result in significant strategic, operational and financial benefits to shareholders, including:

- **Creates Preeminent, High Quality MOB REIT:** With 727 properties totaling 44 million square feet, the Company will be the largest pure-play MOB REIT, with nearly double the square footage of the next largest MOB portfolio. The Company will own the largest portfolio of on or adjacent to hospital campus properties comprising 28.2 million square feet. 94% of the portfolio's square feet will be in top 100 MSAs.

- **Achieves Critical Scale with Enhanced Clusters:** The Company will own over 1 million square feet in 14 distinct markets, representing over 50% of the portfolio's square feet. Nearly 80% of the portfolio's square footage will be located in markets with over 500,000 square feet. Meaningful scale in markets drives operational efficiencies for tenants and incremental leasing and investment volumes. Across the entire portfolio, the Company will have 147 clusters, each comprised of two to eleven properties within two miles of each other and averaging approximately 195,000 square feet per cluster.

- **Broadens Relationships and Portfolio Diversification:** The portfolio will include properties associated with 57 of the Top 100 health systems in the U.S. on or adjacent to 231 hospital campuses. The top 10 tenants in the portfolio will represent 22.6% of the portfolio's square feet with no single tenant representing more than 5.2%.

- **Expands Development Pipeline:** The Company will have an embedded development pipeline in excess of $2 billion, concentrated in high growth markets such as Seattle, Houston, Denver, Dallas and Raleigh.

- **Material Cost Synergies:** The Company expects to realize annual run rate cost synergies of $33 – 36 million within 12 months of closing from the elimination of duplicative corporate and public company costs.

- **Accretive with Operational Upside:** The transaction is expected to be accretive to Healthcare Realty's per share results assuming full realization of synergies. Longer term, the Company expects to benefit from enhanced leasing volumes to drive occupancy and rent growth across the portfolio as well as property level cost savings.

- **Greater Access to Capital and Balance Sheet Strength:** The Company intends to maintain a flexible, investment grade-rated balance sheet with a well staggered debt maturity profile. With enhanced size and scale, the Company expects to benefit from greater liquidity, higher index weightings and reduced borrowing costs over time.

**Transaction Structure**

At closing, each share of HR common stock will be exchanged for one share of HTA common stock, at a fixed ratio. In addition, a special cash dividend of $4.82 per share will be distributed to HTA shareholders. Taken together and based on HR's share price at the close of markets on February 24, 2022, HTA shareholders will realize an implied value of $35.08 per HTA share, representing an 18.2% premium to HTA's share price at the close of markets on February 24, 2022. This combination is structured as a reverse merger whereby Healthcare Trust of America will be the corporate successor and the Company's name will continue as Healthcare Realty Trust Incorporated. Pro forma for the transaction HR and HTA shareholders will own 39% and 61% of the Company, respectively.

The special cash dividend of approximately $1.1 billion will be financed through joint venture transactions and asset sales. JPMorgan Chase Bank, N.A. has provided a commitment letter to Healthcare Trust of America for a $1.7 billion debt financing for the transaction upon the terms and conditions set forth in the letter. The transaction is expected to close in the third quarter of 2022, subject to customary closing conditions, including the approval of both Healthcare Realty and

Healthcare Trust of America shareholders. The transaction was unanimously approved by the Board of Directors of HR and the Board of Directors of HTA.

**Advisors**

Citigroup Global Markets Inc. is serving as lead financial advisor, Scotiabank is serving as financial advisor, and Hunton Andrews Kurth LLP is acting as legal advisor to Healthcare Realty. J.P. Morgan Securities LLC is acting as exclusive financial advisor and McDermott Will & Emery LLP is acting as legal advisor to Healthcare Trust of America.

**The Materially Incomplete and Misleading Prospectus**

23. On June 10, 2022, the Board caused to be filed a materially incomplete and misleading Prospectus with the SEC. The Prospectus, which recommends that HTA stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the potential conflicts of interested faced by J.P. Morgan; (ii) the financial projections for the Company and HR and the financial analyses performed by J.P. Morgan; and (iii) the background leading to the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's Potential Conflicts of Interest*

24. The Prospectus fails to disclose material information concerning the potential conflicts of interest faced by the Company's financial advisor, J.P. Morgan.

25. Specifically, the Prospectus fails to disclose the fees J.P. Morgan expects to receive for arranging and/or providing financing to HTA in connection with the Proposed Transaction, including with respect to J.P. Morgan's participation in the committed financing of $1.125 billion in the form of a term loan facility. *See* Prospectus at 64-65, 84.

26. When an advisor stands to earn fees through a financing role if a proposed transaction is completed, this incentivizes the advisor to push a deal through regardless of its merits

– creating a serious conflict of interest that compromises the independence of the advisor's advice. Indeed, J.P. Morgan may stand to earn more from financing the Proposed Transaction than it stands to earn from advising on it. Thus, J.P. Morgan was incentivized to push for and recommend the Proposed Transaction in order to receive its advisory fee and the lucrative undisclosed financing fees.

*Material Misrepresentations and/or Omissions Concerning HTA's and HR's Financial Projections and HTA's Financial Analyses*

27. The Prospectus fails to disclose material information concerning the financial projections for HTA and HR.

28. For example, with respect to the Company's and HR's financial projections, the Prospectus fails to disclose all line items underlying: (i) Net Operating Income ("NOI"); (ii) EBITDA; (iii) Funds from Operations; (iv) Funds Available for Distribution; and (v) Unlevered Free Cash Flow.

29. The Prospectus also fails to disclose material information concerning J.P. Morgan's financial analyses.

30. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* of each of HR and HTA, the Prospectus fails to disclose a quantification of: (i) the terminal values of each company; and (ii) the inputs and assumptions underlying the discount rates ranging from 6.65% to 7.15%.

31. With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Prospectus fails to disclose: (i) the individual multiples and financial metrics for each of the companies observed by J.P. Morgan; and (ii) the projected same store NOI for the Company and HR for the year ending December 31, 2022.

32. With respect to J.P. Morgan's *Selected Transaction Analysis*, the Prospectus fails to disclose: (i) the individual multiples and financial metrics for each of the transactions observed by J.P. Morgan; and (ii) the Company's projected same store NOI used in the analysis.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

33. The Prospectus fails to disclose material information concerning the background leading to the Proposed Transaction.

34. Specifically, the Prospectus sets forth:

> Throughout October 2021, the Company and its advisors negotiated and executed non-disclosure and standstill agreements, which we refer to individually as a Non-Disclosure and Standstill Agreement and collectively as the Non-Disclosure and Standstill Agreements, with nine potential counterparties that were contacted as part of the strategic alternatives review process, including HR on October 28, 2021.

Prospectus at 39. The Prospectus, however, fails to disclose whether any of the non-disclosure agreements executed by parties throughout the sale process include a "don't-ask, don't-waive" standstill provision that is still in effect and presently precluding any of the parties from submitting a topping bid for the Company.

35. In sum, the omission of the above-referenced information renders statements in the "Opinion of the Company Financial Advisor," "Certain Unaudited Prospective Financial Information," and "Background of the Merger" sections of the Prospectus materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of HTA will be unable to make a sufficiently informed decision in connection with the Share Issuance and the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and HTA**

36. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

37. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. HTA is liable as the issuer of these statements.

38. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

39. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

40. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Share Issuance and the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

41. The Prospectus is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

42. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

43. Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of HTA within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of HTA and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

48. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of HTA, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Share Issuance, unless and until defendants disclose the material information identified above which has been omitted from the Prospectus;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Prospectus that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  June 22, 2022　　　　　　　　　　**ACOCELLI LAW, PLLC**

　　　　　　　　　　By  */s/ Richard A. Acocelli*
　　　　　　　　　　　　Richard A. Acocelli
　　　　　　　　　　　　33 Flying Point Road, Suite 131
　　　　　　　　　　　　Southampton, NY 11968
　　　　　　　　　　　　Tel: (631) 204-6187
　　　　　　　　　　　　Email: racocelli@acocellilaw.com

　　　　　　　　　　　*Attorneys for Plaintiff*